# **EXHIBIT I**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ARGONAUT INSURANCE COMPANY,

                Plaintiff,

v.

DRIVETRAIN, LLC. ABC
CORPORATIONS 1-10, and
JOHN DOES 1-10,

                Defendants.

Index No.: 656014/2020

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF ARGONAUT INSURANCE COMPANY'S APPLICATION FOR AN ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS AND OTHER RELATED RELIEF**

---

RIKER DANZIG SCHERER
HYLAND & PERRETTI LLP

Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Tel: (973) 538-0800

and

500 Fifth Avenue
New York, New York 10110
Tel: (212) 302-6574

On Brief:    Curtis M. Plaza, Esq.
                  Tod S. Chasin, Esq.
                  Agostino A. Zammiello, Esq.

1

## PRELIMINARY STATEMENT

Plaintiff, Argonaut Insurance Company ("Argonaut") submits this memorandum of law in support of its application for an Order to Show Cause, with temporary restraints and a mandatory injunction, to require Defendant, Drivetrain LLC ("Drivetrain"), to post collateral with Argonaut in the amount of $306,999.80 to secure Drivetrain's indemnity obligation under the subject Bonds issued on behalf of Drivetrain as assignee principal and the associated Indemnity Agreements; or, alternatively, if Drivetrain fails to post collateral, to prohibit Drivetrain from transferring any assets. Injunctive relief is required and appropriate to fully effectuate Argonaut's contractual rights.

As explained in depth below, Argonaut satisfies the requirements for an issuance of a preliminary injunction. First, it is clear that Argonaut will succeed on the merits based on (1) the plain language of the parties' Indemnity Agreements, (2) the undisputed facts, and (3) well-established precedent in New York law. Second, Argonaut faces irreparable injury if an injunction is not granted. Argonaut's current obligations under the Bonds totals $306,999.80, and there is a likely possibility that the assets of the assignee principal under the Bonds – a Plan Administrator appointed under a confirmed Chapter 11 bankruptcy case -- will be liquidated before Drivetrain repays the Bonds. Finally, the balance of equities favors Argonaut, which is merely attempting to enforce the plain language of the Indemnity Agreements. For all the foregoing reasons, Argonaut respectfully requests that the Court grant its Order to Show Cause.

## STATEMENT OF FACTS

### A. Argonaut's Bonds and Exposure

Argonaut provides bonding services to satisfy certain import duties to U.S. Customs and Border Protection ("U.S. Customs"), allowing goods to flow through customs before duties are

2

calculated and fully paid. See Verified Complaint at ¶ 5; Affidavit of Christopher C. Flagg ("Flagg Affidavit") at ¶ 4. Specifically, Argonaut issued two Customs Bonds to Hollander Sleep Products, LLC ("Hollander Sleep") as principal, totaling $1,950,000.00, Customs Bond Nos. 9914L2864 and 9914L2875 (collectively, the "Bonds"). Id. at ¶ 6, Exhibits A and B, respectively; Flagg Affidavit at ¶ 5. The Bonds were initially issued on June 17, 2014 and renewed annually for one-year periods thereafter through June 16, 2018. Id. at ¶ 7; Flagg Affidavit at ¶ 6. The Bonds were terminated on June 16, 2018. Id. at ¶ 8; Flagg Affidavit at ¶ 7.

The Bonds secured the obligations of Hollander Sleep to the U.S. Customs as beneficiary, for customs, duties, fees, and other charges while the Bonds were in effect. Id. at ¶ 9; Flagg Affidavit at ¶ 8. The first Bond, Bond No. 9914L2864, requires Argonaut to secure up to $50,000.00 in customs liabilities that may become due subject to the terms of the Bond in any one-year period. Id. at ¶ 10; Flagg Affidavit at ¶ 9. Argonaut's potential and future liability under Bond No. 9914L2864 is cumulative so that its total potential and future liability is $50,000.00 multiplied by the number of years that Bond No. 9914L2864 was in effect. Id. Here, the Bond was in effect for four (4) years, resulting in a potential and future liability of $50,000 x 4 = $200,000. Id. The second Bond, Bond No. 9914L2875, requires Argonaut to secure up to $1,900,000.00 in custom liabilities that may become due subject to the terms of the Bond in any one-year period. Id. at ¶ 11; Flagg Affidavit at ¶ 10. Argonaut's potential and future liability under Bond No. 9914L2875 is cumulative so that its total potential and future liability is $1,900,000.00 multiplied by the number of years that Bond No. 9914L2875 was in effect. Id. Here, the Bond was in effect for four (4) years, resulting in a potential and future liability of $1,900,000 x 4 = $7,600,000. Id.

Accordingly, Argonaut's total potential and future liability under the Bonds for the applicable four (4) years is $200,000 + $7,600,000 = $7,800,000.00, in the aggregate. Id. at ¶ 12; Flagg Affidavit at ¶ 11.

### B. The Indemnity Agreement

In connection with the Bonds, Indemnity Agreements were executed in May 2014, whereby Hollander Sleep, Dream II Holdings, LLC ("Dream Holdings"), and Hollander Home Fashions Holdings, LLC ("Hollander Home" and, collectively, "Indemnitors") agreed to, among other things, indemnify and save harmless Argonaut from and against all claims and liabilities in any way arising from the Bonds. Id. at ¶ 13; Flagg Affidavit at ¶ 12. The Indemnitors were required to pay for all payments made under the Bonds to U.S. Customs. Id. at ¶ 14; Flagg Affidavit at ¶ 13.

In the event that Argonaut makes payments to U.S. Customs on the Bonds, the Indemnitors are required to indemnify and pay Argonaut for all such payments, plus costs, attorneys' fees and interest. Id. at ¶ 15, Exhibits C, D, and E; Flagg Affidavit at ¶ 14. In the Indemnity Agreements, the Indemnitors agreed to indemnify Argonaut from any and all liability:

> [I]ndemnify and save harmless Company [Argonaut] from and against any and all liability, claim, demand, loss, damage, expense, cost, attorney's fees and expenses, included without limitation, fees and disbursements of counsel incurred by the Company [Argonaut] in any action or proceeding between the indemnitor[s] and the Company [Argonaut], or between the Company [Argonaut] and any third party, which Company [Argonaut] shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the Company [Argonaut] as a joint or several obligor and whether the indemnitor[s] is then liable to make such payment, and to place the Company [Argonaut] in funds to meet all its liability under any bond, promptly upon request and before Company may be required to make any payment thereunder…

Id. at ¶ 16, Indemnity Agreements at ¶ 2; Flagg Affidavit at ¶ 15. Furthermore, the Indemnity Agreements provide that the Indemnitors need to provide funds upon a demand by U.S. Customs:

> Any demand upon the Company [Argonaut] by the Obligee [the United States of America] shall be sufficient to conclude that a liability exists and the Indemnitor[s] shall then place the Company [Argonaut] with sufficient funds in a form and amount deemed acceptable in the Company's [Argonaut's] sole discretion, as collateral security to cover the liability.

Id. at ¶ 17, Indemnity Agreements at ¶ 2; Flagg Affidavit at ¶ 16. The Indemnity Agreements also state that any successors to the original Indemnitors are equally bound:

> Each Indemnity and the heirs, legal representatives, successors and assigns of each Indemnitor[s] are, jointly and severally, bound by the provisions of this agreement and the liability of each Indemnitor[s] shall not be dependent upon the execution of this agreement or any instrument referred to by any other Indemnitor, and that if the Company [Argonaut] procures any co-surety or reinsurance or other surety on said bond or bonds this agreement shall be deemed extended to and for the benefit of the co-surety, reinsuring company or other surety.

Id. at ¶ 18, Exhibits C, D, and E; Flagg Affidavit at ¶ 17.

### C. The Hollander Sleep Chapter 11 Bankruptcy Action

On May 19, 2019, Hollander Sleep and certain affiliates (collectively "Debtors") filed for bankruptcy protection under Chapter 11 of the federal Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). Id. at ¶ 19; Flagg Affidavit at ¶ 18. The Debtors were New York-based manufacturers of bed pillows, mattress pads, comforter and other bedding products. Id. at ¶ 20; Flagg Affidavit at ¶ 19. Argonaut filed three proofs of claims in the Bankruptcy Case against Hollander Sleep, Dream II Holdings, LLC, and Hollander Home Fashions Holdings, LLC in the aggregate amount of $7,800,000.00. Id. at ¶ 21, Exhibits F, G, and H; Flagg Affidavit at ¶ 20.

A Joint Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code ("Joint Plan") confirmed by the Bankruptcy Court on September 5, 2019. Id. at ¶ 22, Exhibit I; Flagg Affidavit at ¶ 21. Through the Joint Plan, the Debtors transferred substantially all of their assets to a new owner, Bedding Acquisition, LLC ("Bedding Acquisition"). Id. at ¶ 23; Flagg Affidavit at ¶ 22. Pursuant to the Joint Plan, Drivetrain was appointed as the Plan Administrator, meaning that Drivetrain is responsible for administrating the estate, assisting the Debtors in liquidating its assets, administering claims and making payments to creditors, like Argonaut. Id. at ¶¶ 24-25; Flagg Affidavit at ¶¶ 23-24. As such, Drivetrain assumed all debts and liabilities under the Joint Plan as the Debtors' successor. Id. at ¶ 26; Flagg Affidavit at ¶ 25.

Under the terms of the Joint Plan, the Debtors' obligations with respect to the Bonds were reaffirmed:

> [O]n the Effective Date, (1) all of the Debtors' obligations and commitments to any surety bond providers shall be deemed reaffirmed by the Plan Administrator or the Winning Bidder, as applicable, (2) surety bonds and related indemnification and collateral agreements entered into by any Debtor will be vested and performed by the applicable Post-Effective Date Debtor or the Winning Bidder, as applicable, and will survive and remain unaffected by entry of the Confirmation Order . . .

Id. at ¶ 28, Joint Plan at Article V, Part E; Flagg Affidavit at ¶ 27. The Indemnitors, as well as their "heirs, legal representatives, successors and assigns," are jointly and severally bound by the terms and provisions of the Indemnity Agreements. Id. at ¶ 29; Flagg Affidavit at ¶ 28. The Indemnitors' obligations under the Indemnity Agreements were reaffirmed by Drivetrain as the Plan Administrator of the post-confirmation Chapter 11 estates of the Debtors. Id. at ¶ 30; Flagg Affidavit at ¶ 29.

Accordingly, the Debtors and/or their successors, Drivetrain, are required to make the payments to U.S. Customs as well as honor the Bonds and related Indemnification Agreements. Id. at ¶ 31; Flagg Affidavit at ¶ 30.

### D. Argonaut's Demand for Collateral Against Drivetrain

As a result of Drivetrain's failure to pay the Bonds, Argonaut has received a number of claims from U.S. Customs under the Bonds. Id. at ¶ 32; Flagg Affidavit at ¶ 31. Specifically, U.S. Customs has made multiple demands to Argonaut for payment under the Bonds, including case numbers: 2019550120033301; 2019550120033401; 2020170320031501; 2020170320031601; 2020550120005201; and 2020550120005301. Id. at ¶ 33; Flagg Affidavit at ¶ 32.

Due to the bankruptcy filing, Hollander Sleep defaulted on certain import duties owed, causing U.S. Customs to assert claims against the Bonds provided by Argonaut. Id. at ¶ 34; Flagg Affidavit at ¶ 33. In turn, Argonaut made numerous demands to Drivetrain for indemnification pursuant to the terms of the Bonds and the Indemnity Agreements. Id. at ¶ 35; Flagg Affidavit at ¶ 34. By way of letters dated November 1, 2019, December 6, 2019, February 21, 2020, and March 26, 2020, Argonaut invoked the provisions of the Indemnity Agreements by requesting, among other things, proof of discharge of all liability or potential liability incurred in connection with the Bonds. Id. at ¶ 36, Exhibits J, K, L, and M, respectively; Flagg Affidavit at ¶ 35. On June 19, 2020, Argonaut issued its final demand letter whereby Argonaut requested that $132,355.72 be placed in funds pursuant to the Indemnity Agreements on or before July 6, 2020. Id. at ¶ 37, Exhibit N; Flagg Affidavit at ¶ 36.

The $132,355.72 demanded in the June 19, 2020 letter was to be held by Argonaut as collateral under the Indemnity Agreements until such time as adequate proof of discharge of liability for the Bonds has been provided and verified with U.S. Customs, or used as the collateral

funds to satisfy any amounts that are or may become due or owing in connection with the Bonds. Id. at ¶ 38; Flagg Affidavit at ¶ 37. Despite Argonaut's demands, the Indemnitors have failed and refused to reimburse Argonaut or place with it collateral as demanded in material breach of their joint and several obligations under the Indemnity Agreements. Id. at ¶ 39; Flagg Affidavit at ¶ 38.

As of October 1, 2020, U.S. Customs has made demands for $111,303.46, which reflects the current amount asserted as owed by the Debtor and secured by Argonaut under the Bonds ("Open Duty Bill"). Id. at ¶ 40, Exhibit O; Flagg Affidavit at ¶ 39. Moreover, as of October 1, 2020, U.S. Customs has made demands for additional liquidated damages in the amount of $195,696.34 ("Liquidated Damages"). Id. at ¶ 41, Exhibit P; Flagg Affidavit at ¶ 40. The Liquidated Damages consist of violations for not paying the estimated duty at the time the goods enter into the United States. Id. at ¶ 42; Flagg Affidavit at ¶ 41. Therefore, as of October 1, 2020, Argonaut's current obligations under the Bonds totals $306,999.80, which consists of the Open Duty Bill and the Liquidated Damages. Id. at ¶ 43; Flagg Affidavit at ¶ 42.

## LEGAL ARGUMENT

Under CPLR 6301, the New York courts apply a three-part test to adjudicate a request for a preliminary injunction: "the party seeking a preliminary injunction must demonstrate (1) a probability of success on the merits, (2) danger of irreparable injury in the absence of an injunction, and (3) a balance of equities in its favor." Nobu Next Door, LLC v. Fine Arts Hous., Inc., 4 NY3d 839, 840 (2005) (citing Doe v. Axelrod, 73 NY2d 748, 750 (1988)). Here, it is evident that Argonaut has satisfied the three requirements for a preliminary injunction. First, Argonaut is likely to succeed on the merits of its claim against Drivetrain. As the Plan Administrator, Drivetrain is contractually obligated to deposit security in an amount sufficient to protect Argonaut against claims that have been and may be made against the Bonds that Argonaut has issued on behalf of

Hollander Sleep. The Indemnity Agreements that the Indemnitors signed, along with the Joint Plan, gives Argonaut an unqualified right to such relief, as it is undisputed that U.S. Customs has already made numerous claims against the Bonds. Drivetrain, who assumed all liabilities and debts is contractually obligated to repay the Bonds, and to date, they have not.

Second, a finding that Argonaut will be irreparably harmed if the requested collateral is not deposited is warranted given that Drivetrain is presently liable for administering claims from various creditors, including Argonaut, and winding up the estate. New York case law is clear, and plainly holds that a surety will be irreparably harmed if the surety collateral is not paid.

Finally, the equities clearly favor the relief Argonaut has sought given that the Indemnity Agreements and the Joint Plan provide for a deposit of collateral. There is no prejudice to Drivetrain and there is no factual support demonstrating that Argonaut has acted in bad faith or with unclean hands.

Accordingly, Argonaut respectfully requests that the Court enter an Order granting the preliminary injunction requiring Drivetrain to deposit the collateral funds to satisfy any amounts that are or may become due or owing in connection with the Bonds.

I.  **Argonaut Will Succeed On The Merits Of Its Demand For Collateral**

   A. **Argonaut is Entitled to Specific Performance**

Argonaut's demand for adequate security to protect it against potential claims on the Bonds it issued to Hollander Sleep is a common and ordinary business practice in the surety industry, which is routinely enforced by courts in New York. In fact, as early as 1940, the First Department recognized that "[a]n agreement to give security for the performance of another promise is specifically enforceable." National Surety Corp. v. Titan Construction Corp., 26 N.Y.S.2d 227, 230 (N.Y. Sup. Ct.), aff'd 260 A.D. 911 (1940). In Titan Construction, a surety executed a

9

performance bond on behalf of a contractor in connection with a particular project in exchange for, among other things, a promise from the contractor and its indemnitors that in the event the surety "set up a reserve to cover any claim, suit or judgment under any such bond, the indemnitors (defendants) will immediately upon demand, deposit with the surety a sum of money equal to such reserve, such sum to be held by the surety as collateral security on such bond." Titan Construction Corp., 26 N.Y.S.2d at 228-29. The surety subsequently reported that it had "been put on notice that claims will be asserted against it under the bond" and "set up reserves in the aggregate amount of $50,000 to cover them," but that the contractor and its indemnitors had "refused to deposit the sum required," thereby depriving the surety of "the benefit of the security which the defendants have agreed to furnish." Id.

The First Department affirmed the trial court's finding that under these circumstances, the surety lacked an adequate remedy at law, given that the surety

> is threatened with a host of obligations which may, and probably will, mature to some presently undeterminable extent in the future, but these obligations have not at the moment matured and plaintiff could not safely pay any of them now. The covenant by its very nature shows that situations were anticipated in which plaintiff could not determine its liabilities, because it provides that the moneys to be received from the defendants shall be held by plaintiff as collateral security, and not as an outright payment to the plaintiff's own use…

Titan Construction Corp., 26 N.Y.S.2d at 230-31. The trial court held the collateral security provision enforceable, concluding that its "very purpose" was to entitle the surety "the moment danger of possible future liability appears, to security against any loss plaintiff may subsequently sustain if such liability matures, and to save plaintiff from being in the position of a general creditor of defendants, on a parity with their other creditors." Id.

It is uncontested that courts in New York have found that collateral security provisions are enforceable. Travelers Cas. And Sur. Co. v. Dale, 542 F.Supp.2d 260, 263-64 (S.D.N.Y. 2008)

10

("A collateral security provision in an indemnity agreement, which is clear and unambiguous ... is valid and enforceable."). Similarly, courts applying New York law recognizes an indemnitors' obligation to deposit collateral with a surety, and courts have granted specific performance in the form of interim collateral security to a surety while making a distinction between the right to collateral security under an indemnity agreement and an ultimate award for indemnification. See e.g., American Motorists Ins. Co. v. United Furnace Co., Inc., 876 F.2d 293, 300 (2d Cir. 1989); BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J., 214 A.D.2d 521, 521 (1st Dep't 1995); United States Fidelity & Guaranty Co. v. J. United Electrical Contracting Corp., 62 F.Supp.2d 915, 921-22 (E.D.N.Y. 1999); Colonial Surety Co. v. Genesee Valley Nurseries, Inc., 5 A.D.3d 1024, 773 N.Y.S.2d 719 (4th Dep't 2004); Prestige Decorating and Wallcovering, Inc. v. U.S. Fire Ins. Co., 49 A.D.3d 406 (1st Dep't 2008); and Hartford Cas. Ins. Co. v. Cal-Tran Associates, Inc., Civ. No. 05–5575 (GEB), 2008 WL 4165483 (D.N.J. 2008).

In Colonial Surety Co. v. Genesee Valley Nurseries, Inc., 5 A.D.3d 1024, 773 N.Y.S.2d 719 (4th Dep't 2004), the Fourth Department affirmed the Supreme Court's holding that Colonial was entitled to enforce that part of the indemnity agreement requiring the indemnitors to furnish Colonial with collateral security upon demand. Id. at 719. The Appellate Division stated that:

> Pursuant to the [Indemnity] Agreement, defendants are required to furnish collateral security upon plaintiff's demand if a claim is asserted against [Colonial]. [Colonial] submitted proof in admissible form that it received claims under the bonds it issued on behalf of GVN, and it is thus entitled to specific performance of that part of the [Indemnity] Agreement requiring defendants to furnish collateral security…

Id. at 719-20 (citing BIB Constr. Co., Inc., 625 N.Y.S.2d at 550); see also Prestige Decorating and Wallcovering, Inc. v. U.S. Fire Ins. Co., 2007 WL 5555819 (N.Y. Sup. Ct. 2007), aff'd 858 N.Y.S.2D 1 (App. Div. 2008) (holding that the surety is entitled to specific performance of collateral security provision in the indemnity agreement).

11

More recently, in Colonial Sur. Co. v. Eastland Const., Inc., No. 603656/2008, 2009 WL 2440307 (N.Y. Sup. Ct. July 30, 2009) aff'd 77 A.D.3d 581 (1st Dep't 2010), the First Department affirmed the decision of Supreme Court, New York County ordering the defendants to pay collateral security pursuant to the indemnity agreement. In this matter, Eastland Construction Inc. ("Eastland"), the general contractor on two construction projects, was issued payment and performance bonds for both of these projects by the plaintiff Colonial Surety Company ("Colonial"). Id. Eastland executed an indemnity agreement prior to Colonial's issuance of the bonds. Colonial, like Argonaut here, moved for an order to show cause for a preliminary injunction directing Eastland to deposit collateral. Id. Ultimately, in ordering the deposit of the collateral, the court relied upon "the unambiguous language of the Indemnity Agreement which requires Eastland to deposit collateral security upon Colonial's receipt of claims against the…Bonds. As Colonial has received claims against those Bonds, has demanded collateral security from Eastland and Eastland has failed to deposit the required collateral security, Eastland is in default of its contractual obligations and thus exoneration is not foreclosed." Id.

Courts in other jurisdictions have also specifically recognized that the obligation of the indemnitors to deposit collateral with a surety is subject to specific performance by way of a preliminary injunction. See Travelers Casualty & Surety Co. v. Ockerlund, No. 04-C-3963, 2004 WL 1794915 (N.D. Ill. Aug. 6, 2004); U.S. Fidelity and Guar. Ins. Co. v. Cler Const. Services, Inc., No. 03 C 1405, 2003 WL 1873926 (N.D. Ill. April 11, 2003). Specifically, in Ockerlund, the court granted the plaintiff surety's order to show cause for a preliminary injunction requiring the defendant indemnitors to post collateral with the surety. See Ockerlund, 2004 WL 1794915, at *20.

12

The cases recognize that in order for a surety to have "the security position for which it bargained, the promise to maintain the security must be specifically enforced." Safeco Ins. Co. of America v. Schwab, 739 F.2d 431, 433 (9th Cir. 1984); see also BIB Constr. Co., Inc., 625 N.Y.S.2d at 552 ("The damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate") (citing Titan Const. Corp., 26 N.Y.S.2d at 230); United Furnace Co., Inc., 876 F.2d at 300 (enforcing collateral deposit provision by specific performance); First Indemnity of America Ins. Co. v. Kemenash, 328 N.J. Super. 64, 76-77 (App. Div. 2000) (noting surety's "interest is to secure the benefit of the indemnitor's promise to post collateral sufficient to cover the surety's anticipated future losses.").

It is clear from these cases that a surety is entitled to specific performance of a principal's promise to provide it with collateral security against payments that the surety may have to make on a bond that it has issued, especially when the surety demonstrates that a claim or claims have been asserted against the bond.

Here too, the Indemnity Agreements plainly provide that Indemnitors shall:

> indemnity and save harmless [Argonaut] from and against any and all liability, claim, demand, loss, damage, expense, cost, attorney's fees and expenses…in any action or proceeding…between [Argonaut] and any third party, which Company [Argonaut] shall at any time incur by reason of its execution of any bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against [Argonaut] as a joint or several obligor and whether the indemnitor[s] is then liable to make such payment, and to place the Company [Argonaut] in funds to meet all its liability under any bond, promptly upon request and before Company may be required to make any payment thereunder…

See Indemnity Agreements at ¶ 2. Furthermore, the Indemnitors agreed that they would "place Argonaut with sufficient funds in a form and amount deemed acceptable in Argonaut's sole discretion, as collateral security to cover the liability." Id. Drivetrain, as the Plan Administrator, assumed all debts and liabilities under the Joint Plan as the Debtors' successor. It is undisputed

13

that Argonaut has received numerous claims from the U.S. Customs and as of October 1, 2020, Argonaut's current obligations under the Bonds totals $306,999.80, which consists of the Open Duty Bill and the Liquidated Damages. Verified Complaint at ¶ 31; Flagg Affidavit at ¶ 42. Argonaut has made multiple demands upon Drivetrain, and Drivetrain has failed to deposit the required collateral security. It is obvious that Drivetrain is in default of its contractual obligations, and as the Court in Eastland Const., Inc. held, Drivetrain should be ordered to deposit collateral. The Order to Show Cause should be granted as it is readily apparent that Argonaut will succeed on the merits.

### B. Argonaut is Entitled to *Quia Timet* Relief

The Second Circuit has held that "[*q*]*uia timet* is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 934 F.2d 30, 32 (2d Cir. 1991) (citing New Orleans v. Gaines's Adm'r., 131 U.S. 191, 212, 9 S.Ct. 745, 752, 33 L.Ed. 99 (1889); Morley Constr. Co. v. Maryland Casualty Co., 90 F.2d 976, 977–78 (8th Cir.), cert. denied, 302 U.S. 748, 58 S.Ct. 266 (1937)); see also Abish v. Northwestern Nat. Ins. Co. of Milwaukee, Wis., 924 F.2d 448, 450-51 (2d Cir. 1991). The relief is designed to prevent dissipation of funds and to prevent a principal from hiding or avoiding its obligations and absconding. Id. at 33. "The fact that parties have a contract that does not explicitly reference *quia timet* relief does not preclude such relief, and a number of courts have awarded *quia timet* relief where a written indemnity agreement exists." NGM Ins. Co. v. Terra Developers, LLC, Civil Action No. 1:18cv111, 2018 WL 4355844 (E.D. Va. July 31, 2018). In Eastland Const., Inc., the court held that "*quia timet* relief is appropriate since Eastland has been hesitant to provide any

accounting of its financial health to Colonial despite Colonial's repeated requests for that information. Colonial is concerned that should equitable relief be denied herein, Colonial might be left with no adequate remedy at law."

Just as in Eastland Constr., Inc., Argonaut is entitled to *quia timet* relief since it is evident that Drivetrain has failed to provide relief to Argonaut's numerous requests. Given that the Debtors recently emerged from a Chapter 11 bankruptcy and Drivetrain is responsible for winding up the estate including assisting the Debtors in liquidating its assets, administering claims and making payments to creditors, it is imperative for Argonaut to be paid for the Bonds before all of the Debtors' assets are liquidated. Accordingly, given the current circumstances, Argonaut should be entitled to *quia timet* relief.

## II. Argonaut Will Suffer Irreparable Harm Unless It Can Enforce The Collateral Security Clause Of The Indemnity Agreements

The Indemnitors and Drivetrain, by way of the Joint Plan, stipulated and agreed to pay collateral security to cover Argonaut's liability knowing that Argonaut will be irreparable harm if it does not receive the payments. As explained by the First Department in Titan Construction,

> [t]he damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate. There is no way at this time of measuring the substantial damages of the plaintiff for the breach by the defendants, and the equitable relief sought by the plaintiff is required in order that it may be molded to fit the exigencies of the case at the time of the decree.

Titan Construction, 26 N.Y.S.2D at 230; see also American Motorists Ins. Co. v. United Furnace Co., Inc., 876 F.2d 293, 301-02 (2d Cir. 1989) (holding failure of surety to receive bargained-for security makes surety's injury "real and immediate.").

Damages that are both "substantial" and "not ascertainable" are not capable of being repaired, and the surety that suffers them because it did not receive adequate security is by definition irreparably harmed. The Electric Service and Repair court reached this conclusion

15

holding that a surety "will suffer irreparable damage and loss" if its principal rejects a demand to post collateral security and instead is "left free to sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets from being used to discharge their obligations to exonerate and indemnify" the surety. Developers Sur. and Indemn. Co. v. Electric Service & Repair, Inc., No. 09–21678–CIV, 2009 WL 3831437, at *2 (S.D. Fla. Nov. 16, 2009). As the First Department observed in BIB Construction, the point of collateral security is to provide the surety with peace of mind concerning future liabilities under the bonds, and this is different from indemnification, which is a present obligation to pay a sum certain. BIB Constr. Co., 214 A.D.2d at 523. "[T]he Appellate Division has determined that, as a matter of law, the harm to a surety is irreparable where the surety cannot obtain injunctive relief in the event that a principal defaults on its collateral security obligation." Eastland Const., Inc., No. 603656/2008, 2009 WL 2440307 (citing BIB Constr. Co., 214 A.D.2d at 523).

Absent enforcement of the collateral security obligation, a surety that bargained for this "special" security would find itself relegated to the same status as any other unsecured creditor with respect to the assets of its principal. American Motorists Ins. Co. v. Pennsylvania Beads Corp., 983 F. Supp. 437, 440-41 (S.D.N.Y. 1997). Without obtaining specific performance of the collateral security obligations, the surety would forever lose these rights. Once payment is made by the surety, the rights become moot. See Eakin v. Continental Illinois National Bank and Trust Co. of Chicago, 121 F.R.D. 363, 366 (N.D. Ill. 1988). For these reasons, the damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate. See Travelers Casualty & Surety Company v. Ockerlund, No. 04-C-3963, 2004 WL 1794915 (N.D. Ill. Aug. 6, 2004) (holding that the sureties' action is based in equitable relief under the law of suretyship).

16

Here, it is undisputed that (1) there are valid Indemnity Agreements; (2) Drivetrain assumed all debts and liabilities under the Joint Plan, including the Indemnity Agreements, as the Debtors' successor; (3) the Indemnity Agreements are valid contracts; (4) pursuant to the terms of the Indemnity Agreements, the Indemnitors are obligated to post the collateral security; (5) Argonaut has received numerous claims from U.S. Customs in connection with the Bonds; and (6) despite receiving numerous demands from Argonaut, and their explicit obligations under the Indemnity Agreements, Drivetrain has refused to deposit the requested collateral security.

Moreover, the facts of this case make a finding of irreparable harm even easier for this Court. Hollander Sleep recently emerged from Chapter 11 bankruptcy and sold substantially all of its assets to Bedding Acquisition, meaning that Hollander Sleep only has limited assets to pay its creditors, like Argonaut. Drivetrain, as the Plan Administrator, is obligated to administer the estate, assist the Debtors in liquidating its assets, administer claims, and make payments to creditors. It is imperative for Argonaut to be paid immediately before Drivetrain liquidates all of Hollander Sleep's assets. If the preliminary injunction is not granted, it is possible that Argonaut will be held responsible for the current and future obligations under the Bonds. It is clear that Argonaut will be irreparably harmed if they are in a position where they have to satisfy the obligations under the Bonds.

Because Argonaut's current obligations under the Bonds totals $306,999.80, and the possibility that the Debtors' assets will be liquidated before Drivetrain repays the Bonds, it is evident that Argonaut will be irreparably harmed if Drivetrain is not required to post the collateral security. Because Argonaut faces irreparable harm if Argonaut is entitled to the issuance of the preliminary injunction.

### III. The Equities Favor Argonaut, Not Drivetrain

As the party simply seeking to enforce the plain language of the Indemnity Agreements, Argonaut is surely the party favored by the equities in this case. Moreover, Drivetrain is not being asked to make any indemnification payments, instead, Drivetrain is merely asked to provide collateral. As the First Department observed in BIB Construction, "the posting of an adequate reserve does not represent a claim for damages or an award in indemnification. It is merely collateral security held in trust by the insurer that must be repaid to the extent that damages are reduced or not awarded." BIB Constr. Co., 214 A.D.2d at 523. Given that Drivetrain has failed to comply with its limited obligations under the Indemnity Agreements, after numerous demands by Argonaut, Drivetrain cannot now claim that they are in a superior moral position in this matter. Drivetrain is not prejudiced as they have notice of the claims made by U.S. Customs. Further, there is no evidence that Argonaut has acted in bad faith or with unclean hands. Accordingly, the equities favor Argonaut and the Court should enter the preliminary injunction.

## **CONCLUSION**

For all the foregoing reasons, Argonaut respectfully requests that this Court grant its Order to Show Cause and order that Drivetrain post collateral with Argonaut in the amount of $306,999.80.

Dated: November 17, 2020

          Respectfully submitted,

          RIKER DANZIG SCHERER
          HYLAND & PERRETTI LLP

          */s/ Tod S. Chasin*

          Curtis M. Plaza, Esq.
          Tod S. Chasin, Esq.
          Agostino A. Zammiello, Esq.
          500 Fifth Avenue
          New York, New York 10110
          Tel: (212) 302-6574
          Fax: (212) 302-6628

5212077v3